| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:20-CR-34(1) |
| | § | |
| CRISTAL LAGUNAS | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Cristal Lagunas's ("Lagunas") *pro se* Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) and Appointment of Counsel (#62), wherein Lagunas seeks compassionate release and requests the assistance of an attorney. The Government filed a response in opposition (#64). United States Probation and Pretrial Services ("Probation") reviewed the filings and recommends denying the motion. Having considered the motion, the submissions of the parties, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be dismissed.

## I.   Background

On March 18, 2020, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a two-count Indictment against Lagunas and one codefendant (#11). Lagunas was charged in Count One of the Indictment with Conspiracy to Possess with Intent to Distribute a Controlled Substance (500 grams or more of methamphetamine), in violation of 21 U.S.C. § 846, and in Count Two with Possession with Intent to Distribute a Controlled Substance (methamphetamine), in violation of 21 U.S.C. § 841. Lagunas pleaded guilty to Count One of the Indictment on September 25, 2020, pursuant to a binding plea agreement. On February 19, 2021, the court sentenced Lagunas to 135 months' imprisonment, followed by a five-year term of supervised release, in accordance with the terms of the plea agreement. She did not appeal her

conviction or sentence. Lagunas, age 31, is currently housed at Federal Correctional Institution Aliceville ("FCI Aliceville"), located in Aliceville, Alabama. Her projected release date is November 18, 2028.

In her motion, Lagunas asserts two primary claims in support of her motion seeking compassionate release. She contends that she is the sole available caregiver for her 7-year-old son, 10-year-old sister, and incapacitated mother whom she alleges suffers from diabetes and the effects of two cerebral strokes. Lagunas does not include any medical records to substantiate these allegations. The court also notes that the individuals for whom she seeks to provide care reside in Mexico. Lagunas further claims that her 135-month sentence is disproportionately harsh due to the disparity in sentencing between actual methamphetamine and methamphetamine mixture, which accounts for a 4-point increase in her offense level. She concludes by stating that "her exemplary behavior and dedication to rehabilitation while incarcerated demonstrate her readiness for reintegration into society." Included in her motion is a request for the appointment of counsel.

Lagunas does not proffer a formal Proposed Release Plan and provides no information about the specific address of her intended place of residence, which is presumably in Mexico. She does not identify by name all the persons with whom she plans to live, how she will support herself and her family, where she will work and the type of work she will perform, or discuss the availability of medical care, health insurance, public assistance, or transportation. Her Presentence Investigation Report ("PSR"), dated January 27, 2021, indicates that Lagunas is a United States citizen born in Deland, Florida, who relocated to Mexico with her parents when she was 3 months old. She returned to the United States in 2018 where she resided in Houston, Texas, and Miami, Florida, prior to her arrest in 2020. Probation observes that "[a]n address was

2

not provided for her family's residence in Mexico, nor a general residence in the United States," without which "the U.S. Probation Office would not have a suitable residence to approve."

II.    Motion for Appointment of Counsel

Lagunas requests the appointment of counsel to assist her in filing a motion for compassionate release under 18 U.S.C. § 3582(c).  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, 586 U.S. 232, 245-46 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Albarran v. White*, No. 24-2758, 2025 WL 1625537, at *1 (9th Cir. June 9, 2025); *United States v. Jones*, No. 24-11675, 2025 WL 733234, at *2 (11th Cir. Mar. 7, 2025); *Pettis v. United States*, 129 F.4th 1057, 1063 (7th Cir. 2025) ("There is no constitutional right to counsel in postconviction proceedings."); *Tong v. Lumpkin*, 90 F.4th 857, 863 n.2 (5th Cir. 2024); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017). Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.  We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *United States v. Diaz*, No. 22-40044, 2023 WL 1879404, at *3 (5th Cir. Feb. 10, 2023); *see United States v. Garza*, No. 24-40425, 2025 WL 429978, at *1 (5th Cir. Feb. 7, 2025); *United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010); *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court.").

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Lagunas is not entitled to the appointment of counsel to assist her with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in

bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at \*3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Lagunas provides no basis for the court to conclude that the appointment of counsel would benefit her or the court in addressing her motion. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at \*1 (D. Kan. May 21, 2020); *see Diaz*, 2023 WL 1879404, at \*3; *United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at \*1 (E.D. La. Aug. 13, 2020).

In any event, in this situation, she has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Lagunas is 31 years old and there is no indication that she is seriously ill, disabled, or otherwise a candidate for compassionate release. She presents no records regarding the address, living conditions, or health of her mother, son, or sister. According to her PSR, Lagunas graduated from a preparatory high school and attended a university for approximately 6 months in Mexico. Probation indicates that she obtained her General Equivalency Diploma ("GED") while incarcerated and is enrolled in the UNICOR Federal Industries Program. Her current *pro se* motion for compassionate release is 18 pages long, neatly typed, and well-organized. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"); *Diaz*, 2023 WL 1879404, at \*3 ("In other words, the 'interest of justice' does not require the appointment of counsel in this case."). Accordingly, Lagunas's Motion for Appointment of Counsel is DENIED.

III.    Compassionate Release

    A.    Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *accord Freeman v. United States*, 564 U.S. 522, 526 (2011); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction; or

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

7

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are:

(1)   the medical circumstances of the defendant;

(2)   the age of the defendant;

(3)    the family circumstances of the defendant;

(4)   whether the defendant was a victim of abuse while in custody;

(5)   other reasons similar in gravity to those previously described; and

(6)   an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on her own motion must satisfy the following hurdles:

(1)   the defendant must have exhausted her administrative remedies;

(2)   "extraordinary and compelling reasons" must justify the reduction of her sentence or she must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)   the reduction must be consistent with the Commission's applicable policy statements; and

(4)   the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.       Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule."  *Franco*, 973 F.3d at 468.  "Mandatory but nonjurisdictional procedural filing requirements may be waived."  *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025).  Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived.  *McLean*, 2022 WL 44618, at *1.

9

The defendant bears the burden of proving that she has exhausted her administrative remedies before filing a motion for compassionate release. *United States v. Garcia-Martinez*, No. EP-24-CR-0764-DCG-1, 2025 WL 2427619, at *2 (E.D. Tex. Aug. 18, 2025); *accord United States v. DeJean*, No. 2:18-cr-120, 2025 WL 3687269, at *3 (E.D. La. Dec. 19, 2025); *United States v. Mahaffey*, No. 17-54-DLB-MAS-1, at *2 (E.D. Ky. July 3, 2025); *United States v. Escobar*, No. 15-CR-150-2 (ARR), 2024 WL 2111573, at *2 (E.D. N.Y. May 10, 2024); *United States v. Avelar*, No. 3:16-cr-0351-B-2, 2022 WL 17096173, at *2 (N.D. Tex. Nov. 20, 2022); *United States v. Singleton*, No. 14-168, 2022 WL 3576767, at *1-2 (E.D. La. Aug. 19, 2022). Without evidence that the defendant requested compassionate release from the warden and that thirty days have passed since the warden received or denied the request, the defendant fails to satisfy § 3582(c)(1)(A)'s exhaustion requirement. *Avelar*, 2022 WL 17096173, at *2 (finding the exhaustion requirement was not met where a defendant provided a copy of a letter purportedly sent to the warden but did not provide proof the warden received the letter) (citing *United States v. Knox*, No. 3:12-CR-0252-B, 2020 WL 4432852, at *2 (N.D. Tex. July 31, 2020)).

A defendant's motion for compassionate release must be based on the same circumstances as those raised in her request for release to the warden of the facility where she is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *United States v. York*, No. 4:07-CR-181-SDJ, 2025 WL 1397198, at *2-3 (E.D. Tex. May 14, 2025); *United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL

10

5279457, at \*5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at \*1 (E.D. Tex. Jan. 18, 2023)).  "It would disrupt the 'orderly system for reviewing compassionate-release applications' and 'incentivize[] line jumping' to permit defendants to present grounds for compassionate release to the Court that the BOP had not already received the opportunity to consider."  *United States v. Silcox*, No. 3:17-CR-134-TAV-HBG-1, 2020 WL 4341758, at \*2 (E.D. Tenn. July 28, 2020) (quoting *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020)).  Hence, the facts asserted in an inmate's request to the warden and in her motion for compassionate release must be consistent.  *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at \*2 (E.D. La. May 14, 2024); *United States v. Reeves*, No. 3:18-cr-313-B, 2020 WL 3895282, at \*2 (N.D. Tex. July 10, 2020);  *United States v. Samak*, No. 91-189, 2020 WL 2473780, at \*2 (E.D. La. May 13, 2020); *see Gonzalez*, 849 F. App'x at 117.

Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at \*1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord DeJean*, 2025 WL 3687269, at \*3; *Mendoza-Garibay*, 2023 WL 307459, at \*2.  "It is well-settled that the exhaustion requirement is not satisfied when the defendant previously sought administrative relief *on a different ground* than the ground presented to the district court." *DeJean*, 2025 WL 3687269, at \*3.  Successive compassionate release motions must independently satisfy the exhaustion requirement.  *United States v. Ford*, No. 1:16-CR-19-HAB, 2021 WL 5980368, at \*2 (N.D. Ind. Dec. 16, 2021).  "If a prisoner were only required to make one request to the BOP and forever after [be] able to file new motions asserting new grounds for relief, the purpose of the exhaustion requirement would

11

be severely undermined." *United States v. Wardle*, No. 5:18-57-KKC, 2021 WL 4822827, at *3 (E.D. Ky. Oct. 14, 2021); *accord Rivas*, 833 F. App'x at 558; *Ford*, 2021 WL 5980368, at *2.

In this instance, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement. The Government points out in its response to Lagunas's motion: "Here, though Lagunas has attached a document purporting to be evidence of her request for compassionate release to her facility's warden, she provides no evidence that such a request was actually submitted to BOP, and BOP's records do not reflect that any such request has been made." A review of the record reveals that attached to Lagunas's motion is a document dated October 15, 2024, entitled Inmate Request to Staff, which reads:

> I, Cristal Lagunas, respectfully request compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the following reasons: I am the sole available caregiver for my 7-year old son, 10-year old sister, and incapacitated mother, who suffers from diabetes and the effects of two cerebral strokes. My family's stability and well-being are significantly impacted by my absence, and they have no other available support. My mother's severe health conditions prevent her from adequately caring for my children, and without my presence, they would face substantial hardship. Additionally, my sentence disparity is another compelling reason for compassionate release. My sentence of 135 months is disproportionately harsh compared to the average sentences for similar drug offenses. The 4-point sentencing differential for actual methamphetamine instead of methamphetamine mixture has resulted in a disproportionate sentence, considering my minor role[2] in the offense. Since my incarceration, I have maintained excellent conduct, actively participating in educational and vocational programs, which demonstrates my commitment to rehabilitation and readiness for reentry.
>
> Given these circumstances, I respectfully request compassionate release.

---

[2] Contrary to her assertion, Lagunas was not found to have played a minor role in the offense, and her offense level was not reduced accordingly. Instead, her offense level was increased by 2 points for possession of a firearm due to her taking possession of 3 fully automatic AK-47 rifles in exchange for a bag of methamphetamine and by another 2 points because the offense involved the importation of methamphetamine from Mexico.

Lagunas claims in her motion that she submitted a request for compassionate release to the warden on October 15, 2024, and more than 30 days passed without a response, thereby satisfying the exhaustion requirement. As the Government points out, however, Lagunas provides no evidence that she actually submitted the request or that the warden received it, and BOP records do not indicate that any such request was made. In support of this position, the Government attaches two BOP documents. Exhibit A is entitled "Reduction in Sentence (RIS)," which shows through a "Search RIS Request" inquiry any requests for reduction in sentence submitted by an inmate, listed by register number. The register number included is that of Lagunas. The response to the RIS inquiry reveals that no such requests were made. Exhibit B is entitled "Administrative Remedy Generalized Retrieval," which shows any administrative remedy request submitted by an inmate, denoted by register number, again using Lagunas's register number. The report discloses that "NO REMEDY DATA EXISTS FOR THIS INMATE." Hence, official BOP records refute Lagunas's assertion that she submitted a request for compassionate release to the warden. Probation further reports that "per the Supervisory Attorney with the Consolidated Legal Center affiliated with the Bureau of Prisons, Mr. Robert Clark, Ms. Lagunas has not filed any administrative remedy requests." Thus, BOP legal center personnel also provide no support for Lagunas's contention that she submitted such a request to the warden. The court finds Lagunas's unsupported statement inadequate to demonstrate that she has fulfilled the exhaustion requirement. *See Avelar*, 2022 WL 17096173, at *2 (finding the exhaustion requirement was not met where a defendant provided a copy of a letter purportedly sent to the warden but did not provide proof the warden received the letter) (citing *Knox*, 2020 WL 4432852, at *2)).

13

Absent evidence that Lagunas has exhausted her administrative remedies with regard to the claims she advances in her pending motion for compassionate release, she cannot prevail. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *see United States v. Harper*, No. 24-30275, 2024 WL 4664018, at *1 (5th Cir. Nov. 4, 2024) ("[B]ecause the Government properly raised the rule requiring exhaustion in the district court, 'the court *must* enforce the rule.'" (quoting *Franco*, 973 F.3d at 468)); *Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Gomez*, No. 2:17-cr-41-KS-MTP, 2025 WL 420531, at *2 (S.D. Miss. Feb. 6, 2025) ("Congress used clear language: all requests for compassionate release must be presented to the [BOP] before they are litigated in the federal courts."); *United States v. York*, No. 17-00086-BAJ-RLB, 2024 WL 3771442, at *3 (M.D. La. Aug. 13, 2024) (recognizing that a court may not modify a term of imprisonment if a defendant has not filed a request with the BOP); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").

14

Here, because Lagunas presents no evidence that she actually submitted a request to the warden of FCI Aliceville raising the claims she now asserts in her motion for compassionate release, she has not met her burden of proof to establish that she has exhausted her administrative remedies. Therefore, due to her failure to exhaust her administrative remedies before filing her current motion, the court lacks the authority to grant the relief Lagunas requests.

IV.    Conclusion

In sum, Lagunas has not satisfied her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. She has failed to exhaust her administrative remedies before seeking compassionate release in the case at bar. Therefore, in accordance with the foregoing analysis, Lagunas's *pro se* Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) (#62) is DISMISSED.

SIGNED at Beaumont, Texas, this 17th day of March, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE